UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TROY C. PATTON, MARK A. DREWES, KAREN L. PATTON, FRONTIER FINANCIAL HOLDINGS, INC., and FRONTIER CPA GROUP, LLP, <br>    Plaintiffs, <br><br> vs. <br><br> FIDUCIAL FINANCIAL SERVICES, INC., FIDUCIAL BUSINESS CENTERS, INC., FIDUCIAL, INC., FIDUCIAL, S.C., YVES MORARD-LACROIX, WILLIAM MORICE, CHRISTIAN LATOUCHE, FIDUCIAL, INC. BOARD OF DIRECTORS, and FIDUCIAL S.C. BOARD OF DIRECTORS, <br>    Defendants. | 1:05-cv-1481 RLY-WTL |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This matter is before the court on Plaintiffs' Motion for a Preliminary Injunction. The court heard argument on Plaintiffs' Motion on January 11 and 12, 2006. Plaintiffs have asked the court, inter alia, to declare that Plaintiffs are the legal owners of the contested assets and stock currently held by the Defendants and to order that Plaintiffs are to regain operational and executive control over the businesses in question. Being duly advised, the court now issues its findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a):

1

**I.     Findings of Fact**

    **A.     Background**

1. On October 6, 2005, Plaintiffs filed their complaint in this matter, alleging, inter alia, fraud in the inducement and breach of contract.

2. On December 16, 2005, Plaintiffs had the summonses in this case issued to Defendants.

3. On December 19, 2005, Plaintiffs filed a Motion for Temporary Restraining Order and for Preliminary and Permanent Injunctive Relief.

4. The court declined to grant a Temporary Restraining Order and instead held a hearing on Plaintiffs' request for a Preliminary Injunction on January 11-12, 2006.

    **B.     Agreements**

5. The contracts at issue include an Asset Purchase Agreement ("APA") and a Stock Purchase Agreement ("SPA"), collectively, the "Agreements."

6. The APA was entered into by Plaintiffs and Defendant Fiducial Business Centers, Inc. on or about October 7, 2004. Plaintiffs were to sell and Defendants were to buy the assets of Plaintiffs' companies for a series of payments over time. (Ex. 1).

7. Pursuant to Paragraph 11.17 of the APA, Plaintiffs retained a security interest in the customer lists of the Frontier CPA Group. Plaintiffs are entitled to enforce that security interest, but only in the event that Defendants fail to make a payment and do not cure their failure within 90 days. (Ex. 1 at ¶ 11.17).

8. The SPA was entered into by Plaintiffs and Defendant Fiducial Financial Services

on or about October 18, 2004. Plaintiffs were to sell and Defendants were to buy the stock of Plaintiffs' companies for a series of payments over time. (Ex. 2).

9. Both of the Agreements contain integration clauses. (APA ¶ 11.1; SPA ¶ 11(b)).

10. At the closing of the Agreements in October 2004, Plaintiffs received their first payments, totaling $1,627,241.90, for their assets and stock in the Frontier businesses. Equitable title and possession of the businesses passed to the Defendants. (Exs. 1 and 2; Patton testimony).

11. The next scheduled payment following the closing was due on December 15, 2005. Payment of $107,000 was timely made. (Defendants' Proposed Findings of Fact ¶ 28).

**C.  Dispute**

12. Following the closing, Patton was employed as the Director of Financial Services for Fiducial Financial Services, Inc. As of the hearing date, Patton had been terminated from this position.

13. Following the closing, Drewes was employed as the Operations Manager of Diamond Title. As of the hearing date, Drewes continued to be employed by Diamond Title.

14. Disputes arose between Patton, Drewes, and other former Frontier employees and Fiducial and its employees concerning Fiducial's operation of the businesses. Plaintiffs argue that Defendants' operational inadequacies have failed to preserve the operations of the businesses as contemplated by the parties prior to the closing.

15. Following Fiducial's acquisition of the businesses, many vendor payments were not paid until they were well past due, and some checks written to vendors bounced.

16. Testimony at the hearing revealed that the late payment problem was the result of many contributing factors: delays in changing vendor accounts over from Frontier to Fiducial; poor communication between Fiducial's accounting department in Maryland and the field offices; intermittent lack of funds in the relevant account; and turnover in the accounting offices. As a result of late and failed payments to vendors, many employees have spent a frustrating, significant amount of time dealing with creditors. (Patton and Mares testimony).

17. Problems arose with respect to Fiducial's compliance with licensing and insurance requirements. For example, the NASD issued Defendants a cease and desist letter on December 8, 2005, for noncompliance with disclosure requirements. (Ex. 221). Failure to maintain proper licensing can expose individual employees to liability. (Patton testimony).

18. Some employees' raises, expense account reimbursements, and/or commissions have been paid late. This has contributed to the already significant problem of low employee morale. (Patton and Reese testimony)

19. Some employees have had delays in being reimbursed for health and/or dental insurance claims. (Sprinkle testimony).

20. Many former Frontier employees have resigned due to, at least in part, these

        operational difficulties. (Patton, Stoppenhagen, Mares, and Reese testimony).

21. Plaintiffs believe that Fiducial is insolvent and therefore not capable of meeting its obligations under the Agreements. Darlene Siegel, Fiducial's Controller, testified that, while Fiducial is experiencing some cash flow problems due to its recent expansion, it is not insolvent.

22. Defendants presented hearing testimony that Fiducial, Inc. and its subsidiary corporations are in turn wholly owned subsidiaries of Fiducial, S.C., a French company. (Yves Morard-Lacroix testimony; Defendants' Proposed Findings of Fact at 4). Fiducial, S.C. has $600 million in annual revenues and over 5,000 employees worldwide. (*Id.*). Fiducial, S.C. is not a party to the Agreements.

23. Plaintiffs claim that Defendants' operational mismanagement is causing them irreparable harm in the form of damage to Plaintiffs' goodwill. They also claim that Defendants' actions have caused a loss of clientele and revenue, such that the businesses may fail altogether.

**II.  Conclusions of Law**

24. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2d ed.1995) (emphasis added; footnotes omitted)). *See also W.C.M. Window Co., Inc. v. Bernardi*, 730 F.2d 486, 490 (7th Cir. 1984) ("an injunction is

an extraordinary remedy, rarely available as a matter of right"); *Fox Valley Harvestore, Inc. v. A. O. Smith Harvestore Products, Inc.*, 545 F.2d 1096, 1097 (7th Cir. 1976).

### A. Likelihood of Success on the Merits

25. As a threshold matter, in order to be entitled to a preliminary injunction, the moving party must establish its likelihood of success on the merits. *Gateway E. Ry Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134, 1137 (7th Cir. 1994). "[L]ikelihood of success exists if the party seeking injunctive relief shows that it has a better than negligible chance of succeeding on the merits." *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1114-15 (7th Cir. 1997) (citations omitted).

26. The integration clauses in the Agreements undermine Plaintiffs' fraudulent inducement arguments based on representations made prior to the closing of the Agreements. *Lawlis v. Kightlinger & Grey*, 562 N.E.2d 435, 439 (Ind. Ct. App. 1990) (integration clauses "express the parties' intention that all prior negotiations, representations, previous communications, and the like are either withdrawn, annulled, or merged into the final written agreement"). And Plaintiffs' claim for breach is undermined by the fact that Fiducial does not appear to be insolvent and has not failed to make any of its required payments under the Agreements.

27. Plaintiffs have not established their likelihood of success on the merits.

### B. Irreparable Harm

28. If likelihood of success is established, the movant must then demonstrate that it will suffer irreparable harm if preliminary injunctive relief is denied, and that there is no adequate remedy at law to compensate for its losses. *Gateway*, 35 F.3d at 1137. The harms Plaintiffs claim are injury to goodwill and possible destruction of the business.

29. Injuries to a business's goodwill can be the basis for a preliminary injunction. *Meridian Mut. Ins. Co.*, 128 F.3d at 1117. Under the terms of the Agreements, however, the goodwill of the businesses has been transferred to Defendants; that goodwill is not Plaintiffs' to protect. (*See* Defendants' Ex. D, Assignment of Intangibles).

30. As part of their goodwill claim, Plaintiffs argue that clients and vendors might cease doing business with Fiducial. This argument is speculative and does not warrant the extraordinary remedy of a preliminary injunction. *See, e.g., East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 704 (7th Cir. 2005) (reversing district court's grant of summary judgment and noting that "[n]ot every conceivable injury entitles a litigant to a preliminary injunction. For example, speculative injuries do not justify this extraordinary remedy").

31. Similarly, Plaintiffs' conjecture that Fiducial may go out of business does not warrant a preliminary injunction. Plaintiffs cite *Roland Machine* for the proposition that a damages remedy may be inadequate if it comes "too late to save

7

plaintiff's business." *Roland Mach. Co. v. Dresser Industries, Inc.* 749 F.2d 380, 386 (7th Cir. 1984). But the business in question here is Fiducial's, not Plaintiffs'.

32. Patton and Drewes also argue that their own personal goodwill in their business communities is suffering. (Plaintiffs' Proposed Findings of Fact at ¶ 61). As a term of art, "goodwill" is defined as "[a] businesses's reputation, patronage, and other intangible assets that are considered when appraising the business." *Black's Law Dictionary* 703 (7th ed. 1999); *see also Lawlis v. Kightlinger & Gray*, 562 N.E.2d 435, 442 n.1 (Ind. Ct. App. 1990). Patton and Drewes' reputations as individuals are not covered by this definition. Moreover, Plaintiffs' Proposed Conclusions of Law make no reference to this issue; rather, they focus on whether Plaintiffs' alleged financial loss can sustain an injunction. Plaintiffs apparently concede that their claim for damages to Patton and Drewes' individual reputations does not warrant a preliminary injunction.

33. Plaintiffs have not demonstrated that they will suffer irreparable harm in the absence of an injunction.

### C. Balance of Harm

34. "If the movant does show some likelihood of success, the court must then determine how likely that success is, because this affects the balance of relative harms . . . ." *Gateway E. Ry Co.*, 35 F.3d at 1137 (citing *Roland Mach. Co. v. Dresser Indus.*, 749 F.2d 380, 387 (7th Cir. 1984).

35. "The more likely the plaintiff is to win, the less heavily need the balance of harms

weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Roland Machinery Co.*, 749 F.2d at 387.

36. Reversing the merger of interests and operational management that has taken place over the past year would be extraordinarily complex if not impossible. Plantiffs acknowledge that the harms to Defendants would include "franchisee confusion, *impracticality*, and inconvenience." (Plaintiffs' Proposed Conclusions of Law ¶ 76 (emphasis added)).

37. Granting the injunction would put the court in the position of monitoring the operations of the businesses. A "federal judge, however able and experienced, is in no position to supervise" a complex financial consulting and accounting business. *Roland Machinery Co.*, 749 F.2d at 391 (referring to a construction equipment dealership).

38. Moreover, Plaintiffs waited over two months after they filed their complaint to serve the complaint on Defendants and to file their motion for injunctive relief, which indicates that the harm they may be facing is not so urgent as to warrant injunctive relief.

39. Granting the injunction would divest Fiducial of an interest for which it has already paid over $1.7 million.

39. The balance of harms weighs in Defendants' favor.

**D.     Conclusion**

Plaintiffs have not established the likelihood of their success on the merits of their claims for fraud or breach.  They have also failed to show that they will suffer irreparable harm in the absence of an injunction.  Assuming, arguendo, that they had established the elements of likelihood of their success and irreparable harm, the balance of harms would still weigh against them.  Therefore, Plaintiffs' Motion for a Preliminary Injunction is **denied**.


Dated:  January 23, 2006.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana


Electronic copies to:

Andrew Patrick Berry
GOODIN ORZESKE & BLACKWELL
aberry@goblaw.com

Jennifer L. Blackwell
GOODIN ORZESKE & BLACKWELL
jblackwell@goblaw.com

Mary F. Schmid
STEWART & IRWIN, P.C.
mschmid@silegal.com