UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

TROY C. PATTON, MARK A. DREWES,  )
KAREN L. PATTON, FRONTIER             )
FINANCIAL HOLDINGS, INC., and       )
FRONTIER CPA GROUP, LLP,            )
    Plaintiffs,                            )
                               )
    vs.                                    )        1:05-cv-01481-RLY-WTL
                               )
FIDUCIAL FINANCIAL SERVICES, INC.,)
FIDUCIAL BUSINESS CENTERS, INC.,    )
FIDUCIAL, INC., FIDUCIAL, S.C., YVES )
MORARD-LACROIX, WILLIAM            )
MORICE, CHRISTIAN LATOUCHE,        )
FIDUCIAL, INC. BOARD OF              )
DIRECTORS, and FIDUCIAL, S.C.        )
BOARD OF DIRECTORS,                 )
    Defendants and Counterclaimants,     )
                               )
    vs.                                    )
                               )
TROY C. PATTON,                       )
    Counterdefendant                       )

**ENTRY ON FIDUCIAL FINANCIAL SERVICES, INC.'S MOTION
FOR PRELIMINARY INJUNCTION**

        The parties appeared by counsel, and in person, on December 5, 2006 for purposes

of a hearing on the motion for preliminary injunction filed by Defendant Fiducial

Financial Services, Inc. ("Fiducial").  An injunction is an extraordinary remedy.  In order

for the requesting party to obtain a preliminary injunction, it must demonstrate a

likelihood of success on the merits, that it is suffering irreparable harm that outweighs the

harm the nonmoving party will suffer if the injunction is granted, that it has no adequate

remedy at law, and that an injunction will not harm the public interest. *Christian Legal*

*Society v. Walker,* 453 F.3d 853, 859 (7th Cir. 2006). Even if the moving party offers

evidence adequate to support each of those propositions, it then becomes the court's

responsibility to weigh the factors and balance the claimed harms to decide if the interests

of the nonmoving party and public will be harmed sufficiently to deny issuance of the

injunction. *Id.*

**BACKGROUND**

Plaintiffs, Troy Patton and his partners, sold their financial businesses which

provided investment counseling, accounting and tax related services (the "Frontier

Companies") to Defendants in October of 2004, with payments to be made over time on

the basis of the performance of the companies. Subsequently, neither of the parties have

been particularly satisfied with the deal. Troy Patton stayed on for awhile after the sale as

Director of Financial Services of Fiducial, but believed the business was not appropriately

operated and that the clients were not being adequately serviced. Defendants came to

believe that Patton was neglecting his loyalty and work responsibilities as a Fiducial

employee and was simply setting himself up in a new business which would, in effect,

compete against Fiducial for current and future clients.

Patton and the other plaintiffs initiated this lawsuit in October of 2005,

complaining that equitable and legal remedies were required in order to cure what they

described as fraudulent misrepresentations in connection with the defendants' financial

viability which, along with other claimed contract breaches, they say has caused the

former Frontier Companies to underperform and thereby reduce the ultimate payout to

them.  In their complaint, Plaintiffs essentially ask to be given back their companies or

paid damages for the diminution in their value.  Patton was fired by defendant Fiducial in

January of 2006.

Patton was the first to seek injunctive relief in this cause.  On January 11 and 12,

2006, this court heard evidence and argument with respect to the Plaintiffs' request for

temporary and permanent injunctive relief.  Among other things, the Plaintiffs asked that

the court declare them the equitable owners of the businesses being purchased by

Defendants.  On January 23, 2006, that motion was denied.

Now Fiducial is at the equity bar and asks the court to enjoin Patton and a

corporation he is associated with from using what it describes as its confidential

information, client lists and prospective client and franchisee lists.  It also seeks to stop

him from competing against Fiducial in violation of the employment and noncompetition

agreements he signed.  Both argument and evidence was heard on December 5, 2006, and

based on the following findings, the court determines that Fiducial's Motion for

Preliminary Injunction against Troy Patton should be denied.

**FINDINGS OF FACT**

1.     In October of 2004, at the time the Frontier Companies were sold to Fiducial and

its affiliates, Troy Patton executed a noncompetition agreement which restricted

his ability to compete against Fiducial.  In pertinent part the agreement states:

> **Noncompetition**
>
> (a)     From and after the date hereof for a period ending four (4)
> years after the date upon which the Restricted Party ceases to
> be an employee of Buyer or any Affiliate of Buyer, the
> Restricted Party shall not, and shall use his reasonable best
> efforts to ensure that the Company and their respective
> Affiliates shall not, and shall use his reasonable best efforts to
> ensure that the Seller and their respective Affiliates shall not,
> **without the prior written consent of Buyer:**
>
> (i)     perform services for or have any financial interest in
> any business which operates as a broker/dealer or
> otherwise provides financial services to **retail
> customers** within the geographic areas described in
> Paragraph 2(b), or otherwise allow any such business
> to use the name "Frontier" or nay (sic) variant thereof
> in connection with its business,
>
> (ii)    perform broker/dealer or other financial services, other
> than as an employee of Buyer or any Affiliate of
> Buyer, for any person or entity which is or was a
> customer or client of Fiducial or the Business,
>
> (iii)   induce or attempt to induce any person or entity which
> is a customer or client of the Company or was a
> customer or client of the Company prior to the
> Acquisition to terminate its relationship or otherwise
> cease doing business in whole or in part with the
> Business,
>
> (iv)    solicit, entice or induce any person who is an employee
> of the Company or any of its Affiliates or was an
> employee of the Company at any time during the one
> year prior to the Acquisition to become employed by
> any other person, firm or corporation or to leave his
> employment with the Company or any Affiliate of the

Company, nor approach any such employee for such purpose or authorize or knowingly approve the taking of such actions by any other person, or

(v) interfere with any relationship between the Company and any of its suppliers, customers, or clients so as to cause harm to the Company.

(b) The restrictions contained in clauses (i), (iii), (iv) and (v) of Paragraph 2(a) shall apply in the geographic area constituting the area within a sixty (60) mile radius of any office of the Company. The restrictions contained in clause (ii) of Paragraph 2(a) shall apply in the geographic area constituting the whole world.

(c) In addition, **nothing in this Paragraph 2 shall prohibit the Restricted Party from engaging in any business that is not in competition with the Company**, or investing in the securities of any corporation having securities listed on a national securities exchange, provided that such investment does not exceed 3% of any class of securities of any corporation engaged in business in competition with the Company, and provided that such ownership represents a passive investment and that neither the Restricted Party, in any way, either directly or indirectly, nor any group of persons including the Restricted Party, in any way, either directly or indirectly, manages or exercises control of any such corporation, guarantees any of its financial obligations or otherwise takes any part in its business, other than exercising his rights as a shareholder, or seeks to do any of the foregoing. (Emphasis added).

2.  Patton also entered into an employment agreement with Fiducial, the provisions important to this discussion read as follows:

> **SECTION 4. Right to Accept Employment; Non-Competition; Non-Solicitation**
>> **(b) Non-Competition**
>> ... Employee agrees that he/she will not, during the Employment Period and for four (4) years after the date of any termination of his/her employment, either individually for him/herself, or for the benefit of any other entity, either as

employee, consultant, investor or in any other capacity whatsoever; (i) *intentionally solicit to perform* for any Client, Franchisee or Prospective Client or Prospective Franchisee, or (ii) *intentionally solicit to perform* for any Client, Franchisee, Prospective Client or Prospective Franchisee, *any services of a nature or kind similar to those provided by the Company*, or proposed to be provided by the Company, to any Client, Prospective Client, Franchisee or Prospective Franchisee. "Client" means any entity that is identified in writing to Employee as having purchased services or goods from the Company at any time within two years prior to the termination of Employee's employment, and "Prospective Client" means any entity either identified by the Company for solicitation, or solicited by the Company, any time within one year prior to the Employee's termination.  (Emphasis added).

3.     From approximately October 7, 2004, to January 6, 2006, Patton served as the

President and Financial Operations Principal for Fiducial's subsidiary, Fiducial

Advisors, Inc. ("FIA").  He was responsible for the overall compliance and

management of FIA as well as the oversight of the daily advising and servicing of

investment clients.

4.     While President of FIA, Patton came to believe that certain investment accounts

were not in compliance with various SEC and NASD regulations.  As a remedy,

Patton proposed that certain accounts be transferred to a mutual fund he would set

up under the Unified Series Trust ("Unified").  Though Patton would personally

manage the mutual fund, FIA would be paid a quarterly service fee based upon a percentage of the assets in the fund.  Patton had some discussions with others at Fiducial which led him to believe it was acceptable for him to take such actions.

5.    In June of 2005, Patton's mother incorporated the Archer Investment Corporation ("AIC").  Patton serves as President of that corporation and under its umbrella, with the help of Unified, Patton started the Archer Balanced Mutual Fund.  Also under the "Archer" brand, Patton set up Archer Financial Advisors, Inc., which solicits accounting firms, promoting investments, insurance, mortgages and advisory services.

6.    Unified received communications from Fiducial which it interpreted as acquiescence to the establishment of the mutual fund by Patton and the movement of certain FIA accounts into the fund.  And, in September of 2005, the accounts were transferred.  The value of the accounts which were liquidated and transferred was in excess of three million dollars ($3,000,000).

7.    Patton claims that he believed the account transfer to the mutual fund was a "win-win" arrangement for the clients and Fiducial because FIA rid itself of a compliance and management problem while still obtaining a commission and the clients got the benefit of having their assets in a no-load mutual.

8.      Fiducial says that while there may have been discussions with regard to parts of

what became the ultimate financial arrangement, it did not agree to or benefit from

the transactions that led to the liquidation of those certain FIA accounts.  It argues

that it has lost a valuable basis for further solicitation of those clients whose

accounts were liquidated, as well as potential commissions on the invested funds.

More specifically, it complains that as fund manager and as the principal or

impetus behind the other Archer entities, Patton is in competition with FIA,

Fiducial and its affiliates.

9.      According to Patton, he and the Archer entities do not work on the "retail" side of

the investment business.  Rather, he contends that in addition to simple

management of the mutual fund, he and his companies solicit wholesale clients,

such as accounting firms, to offer advice on how to provide retail investment

services.

10.     Subsequent to being terminated from employment with Fiducial, Patton placed his

securities broker/dealer license with WRP Investments, Inc. and, according to the

Archer website, serves as a registered representative of WRP, though he says he is

not actively selling securities.

11.     The evidence shows that while Patton promotes the mutual fund to the general

public, neither he nor his new companies sell directly to retail clients.

12.    Nothing prohibits Fiducial or its affiliates from soliciting any of the clients whose

accounts were liquidated and funds placed in the Archer Balanced Fund and, other

than a solicitation to a Fiducial franchisee who was also an FIA representative

which was made as a result of a mass mailing list, there is no evidence that Patton

or his companies have directly solicited clients or franchisees of Fiducial or FIA.

13.    FIA and AIC are registered with the SEC to provide different services to different

types of clients.

14.    There would be a cost associated with Unified finding another fund manager to

take the place of Patton if he were ordered to stop his fund management activities.

That cost would be passed on directly to those who hold shares of the mutual fund.

The relative small size of the mutual fund would cause the pro rata shares of such

costs to be quite high in comparison to the costs of a management replacement

search for a more sizeable fund.

**CONCLUSIONS OF LAW**

On the basis of the limited record before it, the court reaches no conclusion with

regard to whether or not Patton's past actions were in violation of either his

noncompetition or employment agreements.  Nor does the court reach a final conclusion

with regard to the propriety, under those agreements, of his or his companies' current

work, though on first blush it appears that his current activities differ from the types of

activities which Fiducial and FIA are engaged in.  However, even if the court were to conclude that Patton has violated, and continues to violate the agreements, Fiducial has failed to meet its stiff burden in seeking such an extraordinary remedy.

1.      Fiducial has not shown that it has no adequate remedy at law.  While measurement of damages in this case may be difficult, measurement is possible as is evidenced by Fiducial's efforts in the contemporaneous arbitration proceedings.

2.      Fiducial has not shown that it is being irreparably harmed.  Other than the inadvertent solicitation of a franchisee, the evidence does not support an ongoing effort on Patton's part to seek business directly from past or current Fiducial clients.  To the extent he may have caused some harm by facilitating the transfer of funds from the accounts of Fiducial clients, that harm is not ongoing.

3.      The potential harm to those in the public who own shares in the mutual fund, should they be assessed the costs of locating a new replacement manager for the mutual fund, outweighs the benefits of issuing an injunction and the harm to Fiducial if Patton is allowed to continue to manage the mutual fund until this litigation is resolved.

For the reasons stated in this entry, and based upon the findings set forth

herein, Fiducial's Motion for Preliminary Injunction (Document # 53) is **DENIED**.

Plaintiffs' Motion to Strike Motion for Preliminary Injunction (Document # 67) is

**DENIED as moot**.


ALL OF WHICH IS ORDERED this 24th day of  January 2007.


_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana


Electronic Copies to:
Andrew Patrick Berry
GOODIN ORZESKE & BLACKWELL
aberry@goblaw.com

Jennifer L. Blackwell
GOODIN ORZESKE & BLACKWELL
jblackwell@goblaw.com

Trenton Forrest Hahn
STEWART & IRWIN
thahn@silegal.com

Donald Orzeske
GOODIN ORZESKE & BLACKWELL, P.C.
dorzeske@goblaw.com

Mary F. Schmid
STEWART & IRWIN
mschmid@stewart-irwin.com